UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

In re:                                                          Chapter 11

    Stephen Carl Silverberg,                         Case No. 8-25-73436-las

                   Debtor.

----------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER DENYING
## DEBTOR'S MOTION FOR STAY PENDING APPEAL

Before the Court is the motion, comprised of the *Notice of Emergency Motion for Stay Pending Appeal* [ECF No. 91][1], the *Affirmation of Stephen Carl Silverberg in Support of Emergency Motion for Stay Pending Appeal* [ECF No. 92], and the *Memorandum of Law in Support of Emergency Motion for Stay Pending Appeal* [ECF No. 93] (collectively, the "Stay Motion") filed by Stephen Carl Silverberg (the "Debtor"), the debtor and debtor in possession in the above-captioned case, seeking (1) pursuant to Bankruptcy Rule[2] 8007(a), a stay of any enforcement action that may proceed as a consequence of the Court's Order dated February 11, 2026, dismissing the Debtor's Chapter 11 case (the "Dismissal Order")[3] [ECF No. 63], pending disposition of the Debtor's appeal to the United States District Court for the Eastern District of New York, (2) a stay of any foreclosure enforcement proceedings[4] relating to the

---

[1] Unless otherwise stated, court filings cited herein refer to the Chapter 11 bankruptcy case, *In re Stephen Carl Silverberg*, Case No. 8-25-73436-las, and citations to docket entries are cited as "[ECF No. ____]".

[2] Hereinafter, the Federal Rules of Bankruptcy Procedure are defined as the "Bankruptcy Rules"; title 11 of the United States Code is defined as the "Bankruptcy Code"; and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York are defined as the "Local Rules."

[3] For the reasons set forth on the record of the hearing held on January 29, 2026 to consider the motion of the United States Trustee to dismiss the Debtor's Chapter 11 case, or in the alternative, convert the case to one under Chapter 7 of the Bankruptcy Code (the "U.S. Trustee Motion"), the Court dismissed this Chapter 11 case. The Dismissal Order entered on February 11, 2026 is consistent with the Court's ruling on January 29, 2026.

[4] The Court notes that a stay pending appeal, if any, granted by this Court would be with respect to the Dismissal Order and its effects, not a stay of any foreclosure enforcement proceedings relating to the Property as requested by the Stay Motion.

1

Debtor's real property located at 24 Danville Drive, Greenlawn, NY 11740 (the "Property"), (3) a waiver of any requirement that the Debtor post a supersedeas bond or other security as a condition of the stay, and (4) such other and further relief as the Court deems just and proper. The Stay Motion was briefed by the Debtor and the Secured Creditor (defined below), and the Court heard oral argument at a hearing on April 9, 2026 ("the Stay Hearing").  For the reasons set forth below, the Stay Motion is denied.  The Debtor has not carried his burden to show that a stay is warranted under the standard used by courts in determining whether to grant a stay pending appeal under Bankruptcy Rule 8007(a)(1)(A).

## BACKGROUND

I.      The Debtor's Deficient Filing and Lack of Compliance with Bankruptcy Code Procedures

On September 9, 2025 (the "Petition Date"), the Debtor, who is a lawyer and acting *pro se*[5], filed a skeletal Chapter 11 petition. [ECF No. 1].  The Clerk of the Bankruptcy Court issued a notice of deficiency concerning missing statements and schedules (the "Missing Documents"), requiring the Debtor to file certain of the Missing Documents by September 9, 2025 and certain others by September 23, 2025, with all incomplete filings due by September 23, 2025.[6]  [ECF No. 4].  On September 23, 2025, the Debtor filed a motion to extend the

---

[5] The Court notes that, although we "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest," *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quotation marks and citations omitted), we do not apply that special solicitude in cases where, as here, an attorney is proceeding *pro se*, *see Cox v. Dep't of Justice*, 111 F.4th 198, 207 (2d Cir. 2024).

[6] By September 9, 2025, the Debtor was to file his Certificate of Credit Counseling, Affidavit Pursuant to Local Rule 1007-4, and Schedule of 20 Largest Unsecured Creditors; and by September 23, 2025, the Debtor was to file the Disclosure of Compensation of Attorney for Debtor pursuant to 11 U.S.C. § 329 and Bankruptcy Rule 2016(b) (Official Form 2030); Summary of Assets and Liabilities and Certain Statistical Information (Official Form 106Sum); Schedules A/B, C, D, E/F, G, H, I, and J; Declaration about an Individual Debtor's Schedules (Form 106 Dec); Statement of Financial Affairs for Individuals Filing for Bankruptcy (Form 107); Chapter 11 Statement of Current

2

deadline to file the Missing Documents to October 21, 2025, a date whereby the documents to complete the Debtor's petition would not be due until after the initial § 341 meeting of creditors scheduled for October 15, 2025. *See* Jan. 29, 2026 Hr'g Tr. 8:1-2; U.S. Trustee Mot. ¶¶ 6-7 [ECF No. 36]. The Court granted the Debtor's motion to extend the time to file the Missing Documents to October 10, 2025, with the United States Trustee reserving all rights with respect to the filing of the Credit Counseling Certificate. *See* Order Ext. Deadline to File Missing Docs. [ECF No. 11]. On October 10, 2025, the Debtor filed certain missing statements and schedules, with others still outstanding, including Schedule E/F, which was filed on October 29, 2025 [ECF No. 20], and Debtor's Chapter 11 Statement of Current Monthly Income (Form 122B), which has not been filed to this date. *See* [ECF Nos. 13-16].

Throughout the Chapter 11 case, the Debtor filed monthly operating reports ("MORs") that failed to comply with the applicable United States Trustee Guidelines, and for the month of December 2025, having failed to file a timely MOR, the Debtor filed a motion to extend the time to file the December 2025 MOR (the "MOR Motion") [ECF No. 43]—subsequent to the MOR Motion, the Debtor did not file any additional MORs until the dismissal of the Chapter 11 case. *See* Jan. 29, 2026 Hr'g Tr. 8:17-22.

II.    Debtor's Financial Condition as Disclosed in His Bankruptcy Filings

According to Schedule A/B filed by the Debtor in this Chapter 11 case, the Debtor owns[7] the residential real property located at 24 Danville Drive, Greenlawn, NY 11740, which is the Debtor's primary residence and which the Debtor valued at $1.3 million. *See* [ECF No. 16]. The Debtor listed one secured claim in Schedule D held by The Bank of New York Mellon

---

Monthly Income (Form 122B); and copies of pay statements received from any employer, with all incomplete filings due by September 23, 2025.

[7] The Debtor owns the Property in a tenancy by the entireties with his non-Debtor spouse. *See* Schedule A/B [ECF No. 16].

3

fka The Bank of New York (the "Secured Creditor"), in the amount of $1,494,385.00, which secured the Property.[8]  *See id.*  The Debtor marked this claim as contingent, unliquidated, and disputed, though a judgment of foreclosure and sale had been entered by the Supreme Court of New York State, County of Suffolk ("State Court") in June 2024 with respect to the Property.  *See id.*; Secured Creditor Mot. Ex. 3 [ECF No. 17].    According to the Secured Creditor, the Debtor has not made mortgage, real estate tax, and insurance payments on the Property since December 2007.  *See* Jan. 29, 2026 Hr'g Tr. 39:2-14.

In Schedule A/B, the Debtor also (i) listed personal and household items, valued at $3,435.00; (ii) a checking account, valued at $22,420.00; (iii) a brokerage account, valued at $12,000.00; and (iv) an "interest in family-owned residential non-income real property in Bayside, N.Y.," valued at $78,000.00.  [ECF No. 16].  The Debtor's Schedule E/F disclosed two non-priority unsecured claims, one held by J.P. Morgan Chase Bank, N.A., in the amount of $6,625.14, and another held by PSE&G, in the amount of $0.0.  *See* [ECF No. 20].  In Official Form 106Sum and Official Form 104, the Debtor listed an unsecured claim for student loans in the amount of $4,859.03[9] (though these loans were not listed in Debtor's Schedule E/F.). *See* [ECF Nos. 15-16].

In Schedule I, the Debtor listed monthly income of $0.0 and monthly expenses in the amount of $15,239.65, resulting in a monthly shortfall of ($15,239.65).  *See* [ECF No. 16].  In the Statement of Financial Affairs, the Debtor listed income from operating a business: for January 1, 2025 to the Petition Date, in the amount of $20,708.00; for the calendar year of 2024, in the amount of $93,000.00; and for the calendar year of 2023, in the amount of $88,575.00.  *See id.*  The September and October 2025 MORs revealed monthly deposits from

---

[8] The Secured Creditor filed a proof of claim for a secured claim in the amount of $1,512,303.90 with respect to the Property.  *See* Claims Register, Claim No. 3.

[9] MOHELA filed a proof of claim in the amount of $4,310.27.  *See* Claims Register, Claim No. 1.

4

the Social Security Administration, totaling $4,135.00, but a net monthly cash flow loss due to higher monthly expenses.  S*ee* [ECF Nos. 18-19, 25-26].  According to the United States Trustee, any figures for positive cash balance were misleading because the Debtor was actually drawing down on his bank accounts to cover monthly expenses, which exceeded any monthly income in those months.  *See* U.S Trustee Mot. ¶ 15 [ECF No. 36]; Jan. 29, 2026 Hr'g Tr. 9:1-9. The Debtor's November 2025 MOR disclosed monthly cash receipts of $4,135.00 and cash disbursements of $5,175.86, resulting in an overall cash flow loss for that month. *See* [ECF No. 37].

In the Debtor's declaration in support of opposition to the Secured Creditor's motion to dismiss or convert the case, the Debtor stated that his "current and anticipated income" included: (1) monthly Social Security benefits "in the approximate amount of $[ ]"; (2) regular monthly contribution from the Debtor's spouse "in the approximate amount of $[ ]"; and (3) periodic draws from his law practice.  Debtor's Decl. in Opp'n to Secured Creditor Mot. ¶ 25 [ECF No. 24].  However, there were no documents filed to substantiate any income from contributions by family members or periodic draws from the Debtor's law practice.

III.    Debtor's Failure to File a Chapter 11 Plan

The Debtor did not file a disclosure statement or Chapter 11 plan in this case.  On December 30-31, 2025, the Debtor filed a motion pursuant to 11 U.S.C. § 1112(d) ("Motion to Extend Exclusivity Period") to extend the exclusivity period in which the Debtor may file a Chapter 11 plan to a date that was thirty days after the Court's determination of the pending U.S Trustee Motion, which was returnable on January 29, 2026.  *See* Mot. to Extend Excl. Period [ECF Nos. 39-40].  On January 23, 2026, the Court entered an order, scheduling a hearing on February 12, 2026 and extending the Debtor's exclusive period to file a Chapter 11 plan and solicit acceptances thereto to such hearing date and determination of the Motion

to Extend Exclusivity Period.  *See* [ECF No. 51].

The Debtor has stated several times on the record that the primary purpose of this Chapter 11 case was to contest the validity of the mortgage securing the Property or to challenge the judgment of foreclosure and sale as being void *ab initio*.  *See* Jan. 29, 2026 Hr'g Tr. 25:6-9, 29:3-14, 34:14-17, 36:17-20; Sept. 25, 2025 Hr'g Tr. 6:19-24, 8:23-9:3; *see also* Debtor's Decl. in Opp'n to U.S. Trustee's Mot. ¶ 3 [ECF No. 45] ("The central dispute in this case concerns the validity, enforceability, and amount of the asserted secured mortgage claim against my residence.").  As of the date of the hearing on the U.S. Trustee Motion, the Debtor had not commenced any adversary proceedings to contest the validity of the mortgage or the judgment of foreclosure and sale with respect to the Property.

IV.    Loan History and the Debtor's Prior and Current Bankruptcies

In April 2007, the Debtor executed a consolidated promissory note[10] in the sum of $479,000.00, which was secured by a mortgage granting a security interest in the Property. *See* Secured Creditor Mot. Ex. 1-2 [ECF No. 17].  After the Debtor defaulted under the terms of the loan agreements beginning in December 2007, the Secured Creditor commenced a foreclosure action in May 2008 in State Court (the "First Foreclosure Action").  *See* Debtor's Opp'n to U.S. Trustee Mot. Ex.: 2008 Compl. [ECF No. 61].  The Debtor filed a motion to dismiss the complaint in the First Foreclosure Action, which was denied by order of the State Court dated September 24, 2008.  *See Bank of N.Y. v. Silverberg*, 86 A.D.3d 274, 277 (2d Dep't 2011).  The Debtor appealed this order to the Appellate Division, Second Department, which

---

[10] The named lender and note holder in the consolidated promissory note was Countrywide Home Loans, Inc. ("Countrywide").  *See* Secured Creditor Mot. Ex. 1 [ECF No. 17].  The consolidation agreement was in favor of MERS, as mortgagee and nominee of Countrywide.  *See Bank of N.Y. v. Silverberg*, 86 A.D.3d 274, 276 (2d Dep't 2011).  The validity of the assignment of the note to the Secured Creditor was a matter disputed in the foreclosure action in State Court.  *See* Debtor's Decl. in Opp'n to the Secured Creditor Mot. ¶¶6-8 [ECF No. 24].

reversed the State Court on June 7, 2011, holding that the Secured Creditor failed to establish standing to commence the foreclosure action. *See id.* at 283; *see also* Debtor's Decl. in Opp'n to Secured Creditor Mot. ¶ 8 [ECF No. 24]. On April 21, 2014, the Secured Creditor commenced a second foreclosure action in State Court (the "Second Foreclosure Action"), and the State Court entered a judgment of foreclosure and sale on June 27, 2024. *See* Secured Creditor Mot. Ex. 3 [ECF No. 17].

On April 10, 2025, the Secured Creditor recorded a notice of sale, scheduling a foreclosure sale of the Property for May 15, 2025 (the "First Foreclosure Sale."). *See id.* ¶ 4. The Secured Creditor has stated on the record that the Debtor could not obtain injunctive relief staying the sale from the State Court or the Appellate Division. *See* Sept 25, 2025 Hr'g Tr. 10:12-14 ("[T]he matter was not stayed by the Supreme Court in the State action, and not stayed by the Appellate Division."). The Debtor has also stated on the record that he could not obtain injunctive relief to stay the foreclosure sale. *See* Jan. 29, 2026 Hr'g Tr. 32:11 ("I couldn't get a TRO."); "Debtor's Decl. in Opp'n to U.S Trustee Mot. ¶ 9 [ECF No. 45] ("I commenced this Chapter 11 case after state-court appellate proceedings failed to provide interim relief . . . .").

On May 15, 2025, the day of the First Foreclosure Sale, the Debtor filed his first bankruptcy case (the "First Bankruptcy Case") under Chapter 13 of the Bankruptcy Code in this Court (Case No. 8-25-71893-las), which halted the First Foreclosure Sale. *See* Secured Creditor Mot. ¶ 7 [ECF No. 17]. In the First Bankruptcy Case, the Debtor failed to file (i) a Chapter 13 plan; (ii) a complete set of schedules; (iii) the Statement of Financial Affairs; (iv) the Statement of Current Monthly Income and Means Test; (v) copies of previous year's state and federal income tax returns as required under Section 521 of the Bankruptcy Code; and (vi) all mandatory disclosure documentation as set forth in Local Rule 2003-1. *See* Chapter

13 Trustee's Mot. to Dismiss ¶¶ 3-4 [Ch. 13 ECF No. 24][11]. In addition, the Debtor failed to submit any monthly pre-confirmation payments to the Chapter 13 Trustee and failed to appear at the initial § 341 meeting of creditors held on June 24, 2025. *See id.* ¶¶ 2, 5. Facing a motion to dismiss by the Chapter 13 trustee, the Debtor filed, on June 30, 2025, a third[12] motion to extend the time to file missing schedules and documents, or in the alternative, to voluntarily dismiss the Chapter 13 case pursuant to 11 U.SC. § 1307(b). *See* Debtor's Third Mot. to Extend Deadlines [Ch. 13 ECF No. 25]. The Court dismissed the First Bankruptcy Case on July 1, 2025. *See* Order Dismissing First Bankr. Case [Ch. 13 ECF No. 26].

On July 30, 2025, the Secured Creditor recorded another notice of sale, scheduling a foreclosure sale of the Property for September 9, 2025. (the "Second Foreclosure Sale."). *See* Secured Creditor Mot. ¶ 5 [ECF No. 17]. On September 9, 2025, the day of the Second Foreclosure Sale, the Debtor filed his second bankruptcy case under Chapter 11 of the Bankruptcy Code in this Court, which halted the Second Foreclosure Sale. *See id.* ¶ 9.

V.  Secured Creditor's and U.S. Trustee's Motions to Dismiss or Convert the Debtor's Case

On October 21, 2025, the Secured Creditor filed a motion to dismiss the Debtor's Chapter 11 case pursuant to 11 U.S.C. § 1112(b), or in the alternative, convert the case to one under Chapter 7 of the Bankruptcy Code, with a return date of November 20, 2025 ("Secured Creditor Motion) [ECF No. 17]. On November 13, 2025, the Debtor filed a letter, requesting an extension of the deadline to file opposition papers to the Secured Creditor

---

[11] Citations to docket entries in the First Bankruptcy Case, Case No. 8-25-71893-las, are cited as [Ch. 13 ECF No.___]".

[12] The Debtor filed motions to extend the deadline to file missing schedules and documents on (1) May 29, 2025; (2) June 13, 2025; and (3) June 30, 2025. *See* [Ch.13 ECF Nos. 14, 18, 25]. The Court granted the first two motions by the Debtor to extend the time to file missing schedules and documents. *See* [Ch. 13 ECF Nos. 16, 20].

Motion to November 20, 2025 and an adjournment of the hearing to consider such motion. *See* [ECF No. 21]. The Court granted the Debtor's request by order, which extended the Debtor's time to file opposition papers to November 20, 2025, and adjourned the hearing date to December 11, 2025. *See* [ECF No. 22]. In addition, the order granting the extension directed the Debtor to file proof of service with the Court by no later than November 21, 2025. *See id.* On November 20, 2025, the Debtor filed a memorandum of law in opposition to the Secured Creditor Motion [ECF No. 23]; however, the Debtor continued to file opposition papers after the November 20, 2025 deadline, filing documents up to December 7, 2025 [ECF Nos. 24, 26-33]. The Debtor filed proof of service on December 11, 2025, the day of the hearing. [ECF No. 35]. At such hearing, the Court dismissed the Secured Creditor Motion without prejudice due to a procedural defect related to the Secured Creditor's notice of appearance. *See* Dec. 11, 2025 Hr'g Tr. 17:7-15.

On December 15, 2025, the United States Trustee filed a motion to dismiss the Debtor's Chapter 11 case pursuant to 11 U.S.C. § 1112(b), or in the alternative, convert the case to one under Chapter 7 of the Bankruptcy Code with a return date of January 29, 2026 [ECF No. 36]. On January 21, 2026, the Secured Creditor filed a response in support of the U.S. Trustee Motion (the "Secured Creditor Response") [ECF No. 41]. The Debtor filed opposition papers to the U.S. Trustee Motion and Secured Creditor Response from January 22, 2026 to the date of hearing on January 29, 2026.[13] [ECF Nos. 44-50, 52-54, 56-57, 60-62]. The Court granted the U.S. Trustee Motion at the January 29, 2026 hearing, dismissing the Debtor's Chapter 11 case for cause pursuant to section 1112(b) of the Bankruptcy Code, and entered the Dismissal Order on February 11, 2026 [ECF No. 63].

---

[13] Local Rule 9006-1 provides that "any answering papers shall be served so as to be received at least 7 days before the hearing date" and "any reply papers shall be served and filed at least 3 days prior to the hearing date." Local Rule 9006-1.

On February 18, 2026, the Debtor filed a notice of appeal of the Dismissal Order to the United States District Court for the Eastern District of New York.  [ECF No. 65].  On March 21, 2026, the Debtor filed the Stay Motion, requesting a hearing on shortened notice.  [ECF No. 91-93].  The Debtor filed a certificate of service, stating that the Stay Motion and the proposed order [ECF No. 94] were served "via the Court's CM/ECF system upon all parties registered to receive electronic notice in this case."  [ECF No. 95].

On March 22, 2026, the Debtor filed a letter, requesting (1) a "temporary stay of any foreclosure enforcement activity, including the filing or prosecution of a Notice of Sale, pending a hearing on the motion"; or (2) alternatively, "the entry of an interim administrative stay to maintain the status quo"; and (3) the scheduling of an expedited hearing.  [ECF No. 96].  The Court entered an order (the "Order Denying TRO"), denying the request for a hearing on shortened notice and a temporary stay because the Debtor did not set forth sufficient cause pursuant to Bankruptcy Rule 9006 and Local Rule 9077-1(c) for a hearing on shortened notice—as the Stay Motion did not specify an actual pending foreclosure sale scheduled for a certain date or a notice of sale that had been filed or published with respect to the Property—and because the Debtor failed to comply with the requirements set forth pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, made applicable to this contested matter pursuant to Bankruptcy Rules 7065 and 9014, for entry of a temporary restraining order.  *See* [ECF No. 97].

In the Order Denying TRO, the Court scheduled a hearing on April 9, 2026 to consider the Stay Motion and directed the Debtor to serve the parties in interest by email, if email address was known, and first-class mail, postage prepaid, by no later than March 24, 2026[14].

---

[14] The Debtor was also required to file proof of service with the Court by no later than March 26, 2026.  *See* [ECF No. 97].  On March 25, 2026, the Debtor filed a certificate of service with respect to the Stay Motion.  *See* [ECF No. 100].

10

*See id.* On April 3, 2026, the Secured Creditor filed an objection to the Stay Motion[15] (the Secured Creditor Objection") [ECF No. 106]. On the day of the Stay Hearing on April 9, 2026, starting at 12:06 a.m., the Debtor filed a reply with exhibits [ECF Nos. 108, 110-112] to the Secured Creditor Objection, in contradiction to Local Rule 9006-1, which provides that any reply papers must be served and filed at least three days prior to a hearing date.[16] *See* Local Rule 9006-1. At the Stay Hearing, the Court heard oral argument.

## **DISCUSSION**

I.      Legal Standard

Pursuant to Bankruptcy Rule 8007(a)(1)(A), "a party must move first in the bankruptcy court for . . . a stay of the bankruptcy court's judgment, order, or decree pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). "Stays pending appeal under Bankruptcy Rule 8007 'are the exception, not the rule, and are granted only in limited circumstances.'" *In re LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG), 2022 WL 2657345, at *4 (Bankr. S.D.N.Y. July 8, 2022) (quoting *In re Brown*, No. 18-10617 (JLG), 2020 WL 3264057, at *5 (Bankr. S.D.N.Y. June 10, 2020)). "The moving party bears a heavy burden to show it is entitled to the extraordinary relief of a stay." *Kahlon v. Am. Bank*, No. 24-cv-06843-JMA, 2024 WL 4665279, at *1 (E.D.N.Y. Nov. 4, 2024) (citing *In re Sabine Oil & Gas Corp.*, 551 B.R. 132, 142 (Bankr. S.D.N.Y. 2016)).

The decision to grant or deny a stay pending appeal "lies within the sound discretion

---

[15] The Order Denying TRO provided that responses or objections, if any, to the Stay Motion must be in writing and filed with the Court and served on the Debtor so as to be actually received by no later than April 3, 2026. *See* [ECF No. 97].
[16] The Court disregarded the Debtor's reply papers as improper and untimely. However, even if the Court were to consider such papers, the Court finds that the arguments raised therein do not change its analysis of the issues or its ruling.

of the court." *In re LATAM*, 2022 WL 2657345, at \*3 (citation omitted) (citing *In re General Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009)).  In making such a determination, the Court will consider the following four factors[17]:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
> (2) whether the applicant will be irreparably injured absent a stay;
> (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and
> (4) where the public interest lies.

*In re Endi Plaza LLC*, No. 25-20002 (SHL), 2026 WL 189891, at \*1 (Bankr. S.D.N.Y. Jan. 23, 2026) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)); *see also 2 River Terrace Apt. 12J, LLC v. Ehrenberg*, 21-CV-1239 (JMA), 2021 WL 2661040, at \*1 (E.D.N.Y. June 28, 2021) (citations omitted) (explaining that district courts apply such a four-factor test when "considering a request for a stay pending appeal of a bankruptcy court order").  Previously, when considering the four factors in a test governing the granting of a stay pending appeal, some courts have required satisfaction of all four factors, while other courts, particularly in recent times, have utilized an approach that balanced the four factors.  *See In re 491 Bergen St. Corp.*, No. 25-10091 (DSJ), 2025 WL 1695473, at \*2 (Bankr. S.D.N.Y. June 16, 2025). "The Second Circuit has 'treated these [four factors] somewhat like a sliding scale, citing approvingly other circuits' formulation that . . . more of one [factor] excuses less of the other.'"  *In re Endi Plaza*, 2026 WL 189891, at \*1 (alteration in original) (quoting *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)).  In addition, courts have "held that two of the factors—irreparable

---

[17] Courts in the Second Circuit have also applied a four-factor test articulated by the Second Circuit in *Hirschfeld v. Bd. of Elections in City of N.Y.*:

> (1) whether the movant will suffer irreparable injury absent a stay;
> (2) whether a party will suffer substantial injury if a stay is issued;
> (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; and
> (4) the public interests that may be affected.  *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007) (quoting *Hirschfeld*, 984 F.2d 35, 39 (2d Cir. 1993)).

injury to the movant and likelihood of success on appeal—are the 'most critical.'" *Id.* (quoting *In re Eletson Holdings Inc.*, No. 23-10322 (JPM), 2025 WL 726248, at *8 (Bankr. S.D.N.Y. Mar. 6, 2025)).

With these legal principles in mind, the Court now addresses the four factors. For the reasons set forth below, under either approach—the rule requiring satisfaction of all four factors or the balancing of factors approach—the Court finds that the Debtor has failed to satisfy the requirements for a stay pending appeal.

II.    Analysis

(1) Strong Showing of Likelihood of Success on Appeal

To satisfy this first factor, "[i]t is not enough that the chance of success on the merits be better than negligible"; rather, more than a "mere possibility of relief is required." *In re Mott*, No. 25-10110 (SHL), 2025 WL 2348890, at *4 (Bankr. S.D.N.Y. Aug. 13, 2025) (quoting *Nken*, 556 U.S. at 434)). "It is well-established in this circuit that a party seeking a stay may satisfy the first factor—'likelihood of success'—by showing that there are 'serious questions' going to the merits of the dispute and that the balance of hardships tips decidedly in its favor." *Id.* (quoting *Starke v. SquareTrade, Inc.*, No. 16-CV-7036, 2017 WL 11504834, at *1 (E.D.N.Y. Dec. 15, 2017)). "However, where a 'likelihood of success [is] totally lacking, the aggregate assessment of the factors bearing on issuance of a stay pending appeal cannot possibly support a stay.'" *Youssef v. Sallie Mae, Inc. (In re Hilal Khalil Homaidan)*, 646 B.R. 550, 576 (Bankr. E.D.N.Y. 2022) (alteration in original) (quoting *Uniformed Fire Officers Ass'n v. De Blasio*, 973 F.3d 41, 49 (2d Cir. 2020)).

Here, the Court finds that the Debtor has not made the requisite showing on the likelihood of success on appeal because there are no serious questions going to the merits of

13

the case and the balance tips decidedly in favor of denying a stay. Indeed, the Court finds that a likelihood of success on appeal is completely lacking in this case. In the Debtor's Chapter 11 case, the Court determined that cause existed under 11 U.S.C. § 1112(b) to dismiss the Debtor's case. Once cause is found, and if the limited exceptions set forth in 11 U.S.C. § 1112(b)(1) and (b)(2) do not apply, then dismissal or conversion of the case is mandatory under the Bankruptcy Code. *See* 11 U.S.C. § 1112(b)(1) ("[T]he court shall convert . . . or dismiss a case . . . whichever is in the best interests of creditors and the estate, for cause . . . ."); *In re Hamann*, No. 25-71986-LAS, 2025 WL 2268242, at *3 (Bankr. E.D.N.Y. July 28, 2025). On the other hand, a "bankruptcy court has 'wide discretion' to determine whether cause exists, and if cause is present, to decide whether to convert the case to one under Chapter 7 or to dismiss." *In re GEL, LLC*, 495 B.R. 240, 245 (Bankr. E.D.N.Y. 2012) (quoting *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010)). "The dismissal of a Chapter 11 petition for cause under Section 1112(b) is reviewed for abuse of discretion." *Plasterer v. US Bank Tr. Nat'l Ass'n for VRMTG*, 2:23-cv-6151 (NJC), 2025 WL 101612, at *5 (E.D.N.Y. Jan. 14, 2025) (citations omitted).

1. Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation

The Court found cause to dismiss the Debtor's Chapter 11 case under Section 1112(b)(4)(A) of the Bankruptcy Code for "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). "When determining whether this type of cause for dismissal exists, 'a court must make a full evaluation of the present condition of the estate, not merely look at the Debtor's financial statements.'" *Plasterer*, 2025 WL 101612, at *6 (quoting *In re First*, No. 22-11020, 2022 WL 17723916, at *4 (Bankr. S.D.N.Y. Dec. 15, 2022)). As to the first prong under

14

Section 1112(b)(4)(A), "the existence of a continuing loss to or diminution of the estate[,] can be found where a Debtor consistently suffers a post-petition negative cash flow and is unable to pay current expenses." *Id.* (quoting *In re First*, 2022 WL 17723916, at \*4).  In addition, losses to the estate need not be large; rather, all that is required is that the estate is suffering some diminution in value. *See In re Halal 4 U LLC,* No. 08–15216 (MG), 2010 WL 3810860, at \*4 (Bankr. S.D.N.Y. Sept. 24, 2010) (quoting *In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010)).

Here, although the Debtor's exact monthly income was unclear due to inconsistencies in the Debtor's filings, one thing was clear: the Debtor's post-petition monthly expenses exceeded his monthly income, resulting in a monthly cash flow loss.  Based on the Debtor's sworn schedules I and J, Debtor had a monthly income deficit of ($15,239.65). *See* [ECF No. 16].  Even if the Court considered any Social Security income based on the Debtor's MORs, the Debtor's monthly expenses still exceeded his monthly income, resulting in a monthly cash flow loss.  Although the Debtor had alleged potential income from his spouse or law practice, there had been no documentation to support such income.  In addition, the Debtor was not making post-petition mortgage, real estate tax, and insurance payments on the Property, evidencing an inability to pay basic expenses and causing the mortgage arrears to increase. *See* Jan. 29, 2026 Hr'g Tr. 39:2-14.  Thus, because of the Debtor's lack of disposable income and failure to make such payments on the Property, there was continuing diminution of the estate. *See In re Hamann*, 2025 WL 2268242, at \*4 (finding continuing diminution of the estate where there was "no evidence that the real estate taxes and homeowners' insurance [were] being paid by the Debtor and the Debtor's own sworn statements in her Schedules I and J show[ed] that she ha[d] insufficient income to make these payments, let alone any payments in respect of the mortgage debt and the tax obligation").

15

As to the second prong under Section 1112(b)(4)(A), "rehabilitation means to put back in good condition and reestablish on a sound basis, and implies establishing a cash flow from which its current obligations can be met." *Plasterer*, 2025 WL 101612, at *6 (quoting *In re First*, 2022 WL 17723916, at *4). A debtor should demonstrate some reasonable possibility of remediating his negative cash flow rather than giving mere speculation; according to Collier on Bankruptcy:

> While a debtor who acts diligently and who possesses reasonable prospects should be afforded a fair opportunity to reorganize, the debtor's opportunity must be balanced against the protection of the creditors' interests and the needs of the chapter 11 system as a whole. Visionary schemes that entail risk to creditors without any reasonable probability of success usually warrant prompt conversion to chapter 7.

7 COLLIER ON BANKRUPTCY ¶ 1112.04 (16th ed. updated 2026) (citations omitted). "Courts have held that a reasonable likelihood of rehabilitation is absent when (1) there are no sources offering to lend essential capital to the debtor; (2) the debtor is generating no profits and the reorganization depends upon speculative outcomes; or (3) the debtor lacks a reasonably certain source of income." *In re Los Trece Texas, LLC*, No. 24-10768-smr, 2025 WL 2793109, at *10 (Bankr. W.D. Tex. Sept. 30, 2025) (citations omitted).

Here, the Debtor did not provide any evidence that he could reestablish his cash flow so that he could meet his current obligations, particularly with respect to the mortgage, real estate tax, and insurance payments on the Property. Due to a lack of stable income sources other than Social Security benefits, the Debtor was experiencing decreased liquidity month by month as his negative cash flow forced him to draw on his bank account. *See In re JJ Arch LLC*, 663 B.R. 258, 277 (Bankr. S.D.N.Y. 2024) (finding no reasonable likelihood of rehabilitation where the debtor lacked "income and liquidity to justify the continued incursion of the expenses inherent in the bankruptcy process"). As described above, the Debtor did not provide any evidence to the Court that this situation would be ameliorated.

16

Though the Debtor mentioned possible income from his spouse or law practice, no confirming documentation, such as an affidavit of family contribution, was provided. Nor did the Debtor, since filing for bankruptcy, endeavor to work out any arrangement with the Secured Creditor, whereby he could come current on his obligations. For example, the Secured Creditor continued to pay the real estate taxes and insurance premiums on the Property. Finally, the Debtor did not show diligence in advancing his case—as evidenced by his delay in filing appropriate documents and non-compliance with multiple Court orders—and proposed merely speculative outcomes for reorganization. All the Court had was the Debtor's "visionary scheme" to contest the validity of the mortgage—and even on that front, though the Debtor had asserted that the purpose of this bankruptcy was to challenge the mortgage and judgment of foreclosure and sale as being void, he had not commenced any adversary proceeding to that end. It was only on the day of the hearing to consider the U.S. Trustee Motion, did the Debtor assert that he was ready to file papers regarding such a challenge. *See* Jan. 29, 2026 Hr'g Tr. 35:6-12. Given the circumstances of this case, the Court found that the Debtor had not demonstrated a reasonable likelihood of rehabilitation.

Furthermore, the exceptions under 11 U.S.C. § 1112(b)(1) and (b)(2) did not apply here because the Court did not determine that the appointment of a trustee or examiner under 11 U.S.C. § 1104(a) was in the best interest of creditors and the estate and because Section 1112(b)(2) was inapplicable where there was a finding of cause under Section 1112(b)(4)(A). *See In re Los Trece Texas*, 2025 WL 2793109, at *12 (finding as a matter of law that "a debtor cannot prevail on a § 1112(b)(2) exception argument" when there is "cause under § 1112(b) (4)(A)"). In addition, the Court in its discretion found that dismissal rather than conversion to Chapter 7 of the Bankruptcy Code was in the best interest of creditors and the estate because there would be no assets for a Chapter 7 trustee to administer as there was no equity in the Property. *See* Jan. 29, 2026 Hr'g Tr. 47:19-22 ("There is no purpose to converting . . .

17

because there would be no assets for a Chapter 7 Trustee to administer."); *see also In re Jude Thaddeus Partners 1, Inc.*, No. 10–73014–AST, 2010 WL 4496836, at *11 (Bankr. E.D.N.Y. Nov. 1, 2010) (finding "no legitimate purpose served in conversion" and "no assets for a trustee to administer"). Accordingly, there was cause under 11 U.S.C. § 1112(b)(4)(A) to dismiss this case.

### 2. Debtor's Bad Faith Filing

The Court also found that cause existed under 11 U.S.C. § 1112(b) for a bad faith filing because on the petition date there was "no reasonable likelihood that the [D]ebtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *In re D&G Constr. Dean Gonzalez, LLC*, 635 B.R. 232, 238 (Bankr. E.D.N.Y. 2021) (quoting *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir. 1991)). In other words, there was both objective futility and subjective bad faith in the filing of the Debtor's case. *See In re Valid Value Props., LLC*, No. 16-13299, 2017 WL 123751, at *6 (Bankr. S.D.N.Y. Jan. 5, 2017) (quoting *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997)) (noting that the "bad faith standard in the Second Circuit requires showing 'both objective futility of the reorganization process and subjective bad faith in filing the petition'"). Moreover, the timing of the filing of Debtor's Chapter 11 petition demonstrated that the primary purpose of the filing was use as a litigation tactic and an impermissible use of Chapter 11 not to reorganize but to re-litigate already-adjudicated state court issues. *See In re D&G Constr.*, 635 B.R. at 239; *In re HBA East, Inc.*, 87 B.R. 248, 259-60 (Bankr. E.D.N.Y. 1988) ("As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed

18

as not being filed in good faith."). Finally, the *C-TC* factors[18] laid out by the Second Circuit in *In re C-TC 9th Ave. P'ship* weighed heavily in favor of a finding of bad faith on the part of the Debtor. *See C-TC 9th Ave. P'ship. v. Norton Co. (In re C-TC 9th Ave. P'ship.)*, 113 F.3d 1304, 1311 (2d Cir. 1997).

Here, the Debtor had stated on the record that the primary purpose of filing this Chapter 11 case was to contest the validity of the mortgage securing the Property or to challenge the judgment of foreclosure and sale as being void *ab initio*. *See* Jan. 29, 2026 Hr'g Tr. 25:6-9, 29:3-14, 34:14-17, 36:17-20; Sept. 25, 2025 Hr'g Tr. 6:19-24, 8:23-9:3; *see also* Debtor's Decl. in Opp'n to U.S. Trustee's Mot. ¶ 3 [ECF No. 45] ("The central dispute in this case concerns the validity, enforceability, and amount of the asserted secured mortgage claim against my residence."). Such statements clearly demonstrated that the Debtor did not intend to re-organize by filing for Chapter 11, but rather the Debtor was impermissibly using Chapter 11 as a litigation tactic, as a vehicle to re-litigate already-decided state court issues. The Debtor stated on the record that it had litigated "each and every ruling" in the Second Foreclosure Action as being "grossly erroneous." *See* Jan. 29, 2026 Hr'g Tr. 24:17-23. However, when the Debtor did not prevail in the Second Foreclosure Action and could not obtain injunctive relief staying a sale from the State Court or Appellate Division, he filed for bankruptcy, first under Chapter 13 and then under Chapter 11. *See In re D&G Constr.*, 635

---

[18] The eight *C-TC* factors are as follows:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees. *C-TC 9th Ave. P'ship.*, 113 F.3d at 1131 (citations omitted).

B.R. at 239 ("A bankruptcy filing is made in bad faith if the petition was found to have been filed solely to avoid the consequences of adverse state court litigation.").

As described in the Background section, the Debtor failed to meaningfully advance this case: the Debtor filed a skeletal petition, failed to timely file the Missing Documents, failed to comply with multiple Court orders, filed MORs that did not comply with applicable United States Trustee Guidelines, failed to file any additional MORs after the November 2025 MOR, and failed to file a disclosure statement or plan. Such actions demonstrated an absence of a reasonable possibility that the Debtor would emerge from bankruptcy and also demonstrated bad faith in the Debtor's bankruptcy filing. *See id.* at 240. (finding the debtor's "use of the bankruptcy process [was] merely as a platform to delay the lawful exercise of state law rights and attack final orders of other courts").

This case also demonstrated the objective futility of any possible reorganization in the filing of the Debtor's case. "Courts have found objective futility where 'there is no realistic prospect for a successful rehabilitation or reorganization under Chapter 11,' including where a debtor 'has not filed a plan and is unable to do so.'" *Cf. In re SPAC Recovery Co.*, No. 25-12109 (JPM), 2026 WL 323115, *8 (Bankr. S.D.N.Y. Feb. 6, 2026) (quoting *In re Tucker*, 5 B.R. 180, 184 (Bankr. S.D.N.Y. 1980)). Here, the Debtor had no realistic prospect to successfully rehabilitate or reorganize. First, the Debtor lacked the disposable income to meet his mortgage obligations or to otherwise fund a Chapter 11 plan. Second, under Section 1123(b)(5) of the Bankruptcy Code, a debtor may not modify the rights of holders of secured claims with respect to its primary residence—in other words, the Debtor here must repay the entire mortgage debt under a proposed plan and may not strip down the mortgage to the value of the collateral or otherwise modify the rights of the Secured Creditor. *See* 11 U.S.C. § 1123(b)(5). In this case, the Secured Creditor had a secured claim in the amount of approximately $1.5 million with respect to the Property (which the Debtor valued at $1.3

million), and the Debtor had a small amount of unsecured claims. Thus, given the Debtor's lack of disposable income and monthly cash flow loss, the Debtor was unable to demonstrate that he could propose a plan that would pay the Secured Creditor in full.

Furthermore, the Debtor had stated on the record that he could propose a viable plan if there were no mortgage debt. *See* Jan. 29, 2026 Hr'g Tr. 37:12-13 ("I could meet a plan if there isn't any mortgage."). Thus, it appeared that the Debtor's only hope of reorganizing was for him to successfully prevail in a hypothetical adversary proceeding commenced in this Court against the Secured Creditor, challenging the validity of the mortgage and the entry of the judgment of foreclosure and sale. An adversary proceeding that he did not commence despite making it clear at the initial case management conference held on September 25, 2025, two weeks after the Chapter 11 petition was filed, that he intended to do so. *See* Sept. 25, 2025 Hr'g Tr. 13:15-14:15. In any event, as explained by the Court during the Chapter 11 case, the commencement of such adversary proceeding raises application of the preclusion doctrines of res judicata and collateral estoppel with respect to the Second Foreclosure Action and the State Court's entry of the judgment of foreclosure and sale. *See Anchieta v. Wells Fargo Bank, N.A.* (*In re Anchieta)*, No. 8-23-71283-las, Adv. No. 8-23-08026-las, 2025 WL 1748387, at *20 (Bankr. E.D.N.Y. June 24, 2025) (citing *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003)) (finding that "a pending appeal does not preclude the application of collateral estoppel"). In addition, as further explained by the Court, depending on the status of any appeal of the State Court judgment of foreclosure and sale, an adversary proceeding commenced in this Court seeking to collaterally challenge the judgment of foreclosure and sale may implicate the Rooker-Feldman doctrine. *See Hunter v. McMahon*, 75 F.4th 62, 70-71 (2d Cir. 2023) (holding that Rooker-Feldman did not apply while a state-court appeal was pending).

21

Putting the merits of such a collateral challenge aside, a proposed plan that rested on a successful challenge of the validity of the mortgage in this Court would render the plan speculative and likely unconfirmable. *See Plasterer*, 2025 WL 101612, at * 7 (finding the debtor's plan "contingent on a speculative outcome" and lacking feasibility due to "vague claims" about funds from spouse and a hypothetical sale of the debtor's property for which no actual steps had been taken). And it bears repeating that no such adversary proceeding was commenced by the Debtor in this Court. Accordingly, the Court found that there was both objective futility and subjective bad faith with respect to the Debtor's bankruptcy filing.

"Once the movant has established the existence of both subjective bad faith and objective futility, 'a rebuttable presumption of bad faith arises and the burden shifts to the debtor 'to establish good and sufficient reasons why the relief should not be granted.'" *In re Valid Value Props.*, 2017 WL 123751, at *6 (quoting *Squires Motel, LLC v. Gance (In re Squires Motel, LLC)*, 426 B.R. 29, 34 (N.D.N.Y. 2010)).  "In other words, the debtor must demonstrate the existence of 'unusual circumstances' that establish that 'dismissal is not in the best interests of creditors and the estate.'" *Id.* (quoting 11 U.S.C. § 1112(b)(2)).

Here, the Debtor did not articulate good and sufficient reasons to rebut the presumption of bad faith or that unusual circumstances existed, demonstrating that dismissal was not in the best interest of creditors.  The Debtor did not show a "reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time," which is one of the requirements under Section 1112(b)(2) of the Bankruptcy Code.  11 U.S.C. § 1112(b)(2).  In addition, the circumstances surrounding this case were not unusual because it involved a fairly common scenario of a debtor in essentially a two-party dispute filing multiple bankruptcies to halt an imminent foreclosure sale.  *See* Jan. 29, 2026 Hr'g Tr. 47:23-25.  Furthermore, the circumstances showed that dismissal was, in fact, in the best interest of creditors because, given the Debtor's failure to make post-petition mortgage, real estate tax,

22

and insurance payments, any further delay would prejudice the interests of the Secured Creditor with respect to the Property and continue to diminish the value of the estate.

Finally, the *C-TC* factors laid out by the Second Circuit weighed heavily in favor of a finding of bad faith on the part of the Debtor: (1) the Debtor had one primary asset, the Property; (2) the Debtor had few unsecured creditors whose claims were small in relation to that of the Secured Creditor; (3) the Property was the subject of a foreclosure action as a result of Debtor's default and arrearages on the debt, and the State Court had entered a judgment of foreclosure and sale with respect to the Property; (4) the Debtor's financial condition was, in essence, a two-party dispute between the Debtor and the Secured Creditor, which was best resolved in the pending state court foreclosure action on appeal (the Debtor had stated on the record that the Second Foreclosure Action was under appeal, *See* Jan. 29, 2026 Hr'g Tr. 37:17-18, 40:8-9); (5) the timing of the Debtor's filing evidenced an intent to delay or frustrate the legitimate efforts of the Secured Creditor because the Debtor filed both the current and previous bankruptcies on the day of a scheduled foreclosure sale; (6) the Debtor had little to no cash flow; and (7) the Debtor was not able to meet current expenses, including real estate taxes and insurance payments. *See C-TC 9th Ave. P'ship.*, 113 F.3d at 1311. The eighth *C-TC* factor was not applicable because the Debtor was not a business with any employees. *See id.*

Accordingly, the Court finds that the Debtor has not carried his burden to make a strong showing of a likelihood of success on appeal of the Dismissal Order.

(2) Irreparable Injury or Harm

"A showing of probable irreparable harm is the principal prerequisite for the issuance of a stay, and such harm must be neither remote nor speculative, but actual and imminent[.]" *In re Mongiello*, No. 24-CV-694 (CS), 2024 WL 729865, at *2 (S.D.N.Y. Feb. 22, 2024)

23

(quotation marks and citations omitted). The Debtor's central argument in the Stay Motion is that absent a stay, a potential foreclosure sale of the Property would render any appellate review of the Dismissal Order effectively moot. *See* Stay Mot. Mem. of Law 20 [ECF No. 93]. However, "that an 'appeal may be rendered moot in the absence of a stay is not a bar to finding that the imminent injury factor weighs against Debtor-Appellant.'" *Id.* at \*4 n. 3 (quoting *Hamilton Rd. Realty, LLC v. U.S. Tr.*, No. 20-CV-1746 (LDH), 2021 WL 878734, at \*2 (E.D.N.Y. Mar. 9, 2021)). "Courts are divided, and the Second Circuit has not yet spoken, on the issue of whether the risk that an appeal may become moot in the absence of a stay pending appeal satisfies the irreparable injury requirement," but "a majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm." *Id.* (quoting *In re Windstream Holdings, Inc.*, No. 20-CV-4276, 2020 WL 4481933, at \*3 (S.D.N.Y. Aug. 3, 2020)). "Even if that risk were sufficient to show irreparable harm, 'the mere threat of equitable mootness is not grounds, per se, for granting stay relief. The Court must further consider whether the [movant has] shown actual and imminent irreparable harm and, if so, whether, in balancing the four factors [it has] met [its] burden of proof that [it is] entitled to a stay pending appeal.'" *Id.* (alteration in original) (quoting *In re LATAM*, 2022 WL 2657345, at \*5)).

Thus, notwithstanding the mootness of any appeal, the Court will consider whether the Debtor has shown irreparable injury that is both actual and imminent, and whether in light of all the factors, the Debtor is entitled to a stay. Even where there is a pending foreclosure sale, "'[t]he fact that [a] property will be sold absent a stay does not automatically constitute irreparable harm' because in certain circumstances harm from the sale of a property 'may be fully remedied by monetary damages . . . .'" *G.L.A.D. Enterprises, LLC v. Deutsche Bank Nat'l Tr. Co.*, No. 23-CV-3985 (CS), 2023 WL 5127835, at \*2 (S.D.N.Y. Aug.

10, 2023) (quoting *In re Giambrone*, 600 B.R. 207, 213 (Bankr. E.D.N.Y. 2019)).  However, "where the property is a primary residence and the sale of that property 'would have catastrophic financial and practical repercussions,' including eviction, courts have found irreparable harm." *Id.* (citations omitted) (quoting *In re Magnale Farms, LLC*, No. 17-61344, 2018 WL 1664849, at \*5 (Bankr. N.D.N.Y. April 4, 2018)).  "And while 'courts in this circuit have held that eviction can be an irreparable injury,' those holdings hinge on 'the party facing eviction also fac[ing] the real threat of homelessness.'" *In re Mongiello*, 2024 WL 729865, at \*2 (quoting *Greer v. Mehiel*, No. 15-CV-6119, 2016 WL 828128, at \*9 (S.D.N.Y. Feb. 24, 2016) (collecting cases)); *see also Kahlon v. Am. Bank*, 2024 WL 4665279, at \*1 (finding the irreparable harm factor "at best neutral" because, although a sale of the debtor's property would lead to the loss of his home, there was "no indication that eviction [was] imminent").

Here, the Secured Creditor has filed a notice of sale, scheduling a sale of the Property for April 23, 2026.  *See* Secured Creditor Obj. ¶ 6 [ECF No. 106].  Absent mitigating factors, there are grounds to find irreparable harm absent a stay because of the loss of the Debtor's primary residence and likely imminent eviction thereafter.  Despite these drastic consequences, the Debtor did not once mention in the Stay Motion or provide any facts pertaining to an imminent eviction or threat of homelessness that would result from the sale of the Property.  Rather, the Debtor focused on the transfer of title, the loss of property rights, and loss of appellate review that would result from a foreclosure sale absent a stay.  For example the Debtor states:

> Here, absent a stay, foreclosure proceedings could proceed to auction before federal appellate review is completed. Because bankruptcy appeals commonly require many months in the District Court—and potentially additional time in the Court of Appeals . . . denial of interim relief creates a substantial risk that appellate jurisdiction will be undermined by intervening events. The resulting harm is therefore structural and jurisdictional—not merely economic.

*See* Stay Motion Mem. of Law 21-22 [ECF No. 93] (citations omitted).  Such statements make it appear that the Debtor is less concerned about imminent irreparable harm and more concerned about being able to stay in the Property without paying his mortgage obligations while the appellate process runs its course, even up to the Second Circuit.  Even at the Stay Hearing, the Debtor did not mention imminent eviction or the threat of homelessness.  *See* April 9, 2026 Hr'g Tr.; *see also Buco v. Frost (In re Buco)*, 25-CV-05496 (MMG), 2025 WL 2070767, at \*2 (S.D.N.Y. July 23, 2025) (finding the appellant did not show irreparable harm despite the fact that he may lose his primary residence because he did "not contend that the foreclosure sale will leave him without a place to live").

In addition, at the September 25, 2025 Hearing, the Debtor had stated on the record that he intended to file a motion to extend the automatic stay because in his mind the stay would expire on the 30th day after the filing of this Chapter 11 case.[19]  *See* Sept. 25, 2025 Hr'g Tr. 13:15-21.  These statements show that the Debtor believed that the automatic stay was set to expire shortly after his Chapter 11 bankruptcy filing and that the Secured Creditor could then proceed to sell the Property.  *See* Stay Motion Mem. of Law 4-5 [ECF No. 93].  Yet, the Debtor never brought such a motion to extend the automatic stay. The Debtor again failed to demonstrate a sense of imminent irreparable harm with respect to a possible eviction from his primary residence.  In addition, it appears that the Debtor has certain assets that may enable him to secure another residence, mitigating a threat of homelessness: his Schedule A/B disclosed a brokerage account, valued at $12,000.00, and an "interest in family-owned residential non-income real property in Bayside, N.Y.," valued at $78,000.00.  [ECF No. 16].

---

[19] In *Hale*, this Court held that the automatic stay, which terminates pursuant to 11 U.S.C. § 362(c)(3)(A), does so with respect to the property of the debtor and not property of the estate.  *See In re Hale*, 535 B.R. 520, 527 (Bankr. E.D.N.Y. 2015). However, absent a motion to extend the stay, the Court was not called upon to consider whether the stay should continue beyond the 30-day period and, if not, what is the effect of termination of the stay.

Therefore, the Court finds this factor to be neutral because although there is an actual pending sale of the Property, the imminent eviction of the Debtor and the threat of homelessness has not been clearly demonstrated by the Debtor. Even if the Court were to find that the Debtor has carried his burden to show irreparable harm, the Court finds that the other three factors in the stay analysis weigh heavily against the Debtor—particularly with respect to the likelihood of success on appeal—thus precluding a holding in Debtor's favor. *See In re Magnale Farms*, 2018 WL 1664849, at *4 (denying stay pending appeal despite finding irreparable harm due to the loss of Debtor's primary residence because the other three factors weighed against granting a stay).

### (3) Substantial Harm to the Non-Moving Party

The Debtor must establish that a stay pending appeal will not cause substantial injury to other parties to the proceedings; "[i]n other words, the moving party must show that the balance of harms tips in favor of granting a stay." *In re Koper*, 560 B.R. 68, 75 (Bankr. E.D.N.Y. 2016) (citations omitted). "Courts in this circuit routinely hold that issuing a stay and delaying a foreclosure may constitute substantial financial harm to creditors." *G.L.A.D. Enterprises v. Deutsche Bank*, 2023 WL 5127835, at *2 (citations omitted).

Here, the Debtor has not made mortgage, real estate tax, and insurance payments on the Property since December 2007. *See* Jan. 29, 2026 Hr'g Tr. 39:2-14. In addition, the interest and fees on the mortgage debt continues to accrue, and if a stay is issued, the Secured Creditor will likely need to incur further costs to maintain the value of its collateral and priority of its lien (due to potential real estate tax liens that could arise if real estate taxes are not paid). Thus, the mortgage debt and the costs associated with it continue to grow with each day that passes in this case. The Debtor argues in the Stay Motion that temporary delay is not a "legally cognizable" injury and that "[c]ourts in the Second Circuit repeatedly

27

hold that temporary postponement of enforcement does not constitute substantial injury for the purposes of stay analysis." Stay Motion Mem. of Law 22 [ECF No. 93]. To support this proposition, the Debtor cites one case: "See *In re World Trade Ctr. Disaster Site Litig.,* 503 F.3d 167, 170 (2d Cir. 2007)." However, in that case, the Second Circuit vacated a stay to allow certain district court proceedings to continue with the view that certain plaintiffs may be able to recover damages for life-threatening injuries and certain defendants may be able to vindicate their claims to immunity. *See McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.),* 503 F.3d 167, 170 (2d Cir. 2007). The Second Circuit found that "substantial injury to the parties opposing the stay" had "increased in significance with the passage of time since among the Plaintiffs [were] many people with life-threating injuries" —in other words, the public interest favored vacating the stay to prevent further delay to the potential recovery of damages. *See id.*

Moreover, courts in the Second Circuit have held that delaying the exercise of a creditor's rights and remedies related to a foreclosure may constitute substantial injury. *See Kahlon v. Am. Bank,* 2024 WL 4665279, at *2 (finding that Debtor-Appellant failed to sustain his burden of proof with respect to lack of substantial injury because "a stay will further impede Appellee's ability to seek recourse on a debt that has been in default since 2018"); *In re G.L.A.D. Enterprises, LLC*, No. 22-35425, 2023 WL 3856331, at *3 (Bankr. S.D.N.Y. June 6, 2023) ("Deutsche Bank and others may suffer harm from a stay pending appeal . . . . Debtor has failed to make payments for over fourteen years and has delayed enforcement of the Secured Creditor's rights for nearly as long through multiple bankruptcy filings."). Here, the issuance of a stay would further delay the Secured Creditor's exercise of rights and remedies with respect to the Property based upon the judgment of foreclosure and sale entered by the

28

State Court in the Second Foreclosure Action.  Therefore, based upon the precedent in this Circuit, the Court finds that this factor weighs in favor of denying a stay pending appeal.

### (4)  Public Interest

"The final factor considers the interest of third-parties who act in reliance o[n] the bankruptcy court's ruling."  *Id.* at \*3 (quoting *In re 473 W. End Realty Corp.*, 507 B.R. 496, 508 (Bankr. S.D.N.Y. 2014)).  It is well-settled that "the public has a strong interest in the expeditious administration of the bankruptcy proceedings and preventing the abuse of the court system by those who are unable or unwilling to pay their debts in a timely fashion[.]" *Id.* (citing *In re 473 W. End.*, 507 B.R. at 508).  This Court has recognized that "[t]he interests of creditors are a significant determinant of the public interest in a bankruptcy case." *In re Taub*, No. 08-44210, 2010 WL 3911360, at \*6 (Bankr. E.D.N.Y. Oct. 1, 2010).

Here, the Court finds that denial of a stay would promote the expeditious administration of bankruptcy proceedings because the Debtor has demonstrated an unwillingness and inability to timely pay his mortgage obligations since 2007, and the Secured Creditor has been unable to exercise its rights under the mortgage as the Debtor has twice filed for bankruptcy on the day of a scheduled foreclosure sale, triggering in each instance the automatic stay.  *See G.L.A.D. Enterprises v. Deutsche Bank*, 2023 WL 5127835, at \*4 (noting that public interest did not weigh in favor of stay where "Appellant has not made mortgage payments for years" and "Appellee has been unable to obtain any relief because of the various bankruptcy filings, adversary proceedings, and appeals filed by Appellant").  Such creditor harms are contrary to the public interest.  *See id.* (citing *In re Taub*, 2010 WL 3911360, at \*6).  The Court also finds that denial of a stay would prevent abuse of the bankruptcy system because the record demonstrates that the Debtor filed for Chapter 11 bankruptcy, not for the purpose of reorganizing his debt or repaying creditors,

29

but to re-litigate already-decided state court issues, collaterally attack a judgment of foreclosure and sale entered by the State Court, and delay the lawful exercise of rights and remedies of the Secured Creditor with respect to the Property.

Based on the record before the Court, granting "'the stay would prolong the bankruptcy proceeding with no foreseeable offsetting gain and thus injure creditors,' which 'would be contrary to the public interest.'" *In re 461 7th Ave. Mkt., Inc.*, 623 B.R. 681, 696 (S.D.N.Y. 2020) (citation omitted), *aff'd*, No. 20-3555, 2021 WL 5917775 (2d Cir. Dec. 15, 2021); *see also In re 473 W. End.*, 507 B.R. at 508 (quoting *In re Taub*, 2010 WL 3911360, at *6) (denying motion for stay pending appeal where stay would, among other things, "injure the interests of sound case management in the bankruptcy process, and as a consequence, would also injure the public interest"). As such, the public interest does not favor granting a stay pending appeal.

## CONCLUSION

For the foregoing reasons, the Debtor's motion for a stay pending appeal is denied.

**SO ORDERED.**

Dated: April 13, 2026
    Central Islip, New York

                                                Louis A. Scarcella
                                      United States Bankruptcy Judge